UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

ROBERT A. CRUMB, et. al.,

    Plaintiffs,

-v-

DAIMLERCHRYSLER CORPORATION, et. al.,

    Defendants.
_____/

Case No. 2001-60085
Hon. Marianne O. Battani

# OPINION AND ORDER OF THE COURT GRANTING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND DENYING DEFENDANT'S RENEWED MOTION TO DISMISS

## I. INTRODUCTION

Before the Court are Plaintiffs' Motion for Class Certification and Defendant's Renewed Motion to Dismiss. Plaintiffs Robert Crumb, Robin Easterbrook and John Marinacci allege in their complaint that Defendant DaimlerChrysler's compensation policy for Canadian residents has discriminated against them since 1986, as persons of Canadian national origin. In their motion, Plaintiffs seek a class consisting of "current and former DaimlerChrysler employees of Canadian national origin who reside(d) in Canada and who are/were employed by Daimler Chrysler in the United States, and who are/were paid in Canadian currency." Pl. Motion at ¶ 2. In its motion, Defendant asserts that Plaintiffs do not have a cognizable disparate impact claim. The Court finds that Plaintiff's claim adequately describes a case of disparate impact, and so denies Defendant's Renewed Motion to Dismiss and grants Plaintiffs' Motion for Class Certification.



## II. STANDARD OF REVIEW

The four requisites for filing a class action are "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). These elements, for short, are often respectively referred to as 1) "impracticability," 2) "commonality," 3) "typicality," and 4) "adequacy." All four elements must be satisfied before a class can be certified. E.g., In Re Am. Med. Sys., Inc., 75 F.3d 1069, 1079 (6th Cir. 1996). After satisfying the four parts of Rule 23(a), Plaintiff must then show that a class action would be superior to individual suits for at least *one* of the reasons set forth in Rule 23(b): 1) individual actions could result in inconsistent adjudications that would create contradictory legal precedent; 2) the defendant has injured the class in a way that would be appropriately remedied by injunctive or declaratory relief for the class as a whole; or 3) questions of law or fact common to the class members predominate over any questions differentiating individual members.

In reviewing Defendant's motion to dismiss, the Court should assume all facts alleged in the complaint as true, and should not dismiss unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Thus, the Court should look at the allegations of the complaint and determine whether, if true, they describe claims for which relief can be granted.

## III. BACKGROUND

Plaintiffs are Canadian residents who were employees of Chrysler Canada and were

2

transferred to the United States in salaried positions. Prior to 1986, Canadian employees working in the United States were paid in United States dollars. In 1986, however, Defendant began paying its employees who commuted from Canada in Canadian dollars; i.e., if a U.S. resident working for Defendant had a yearly salary of X American dollars, a similarly situated Canadian resident working for Defendant would have a yearly salary of X Canadian dollars. In order to help alleviate the effects of the unfavorable exchange rate for the Canadian commuters, Defendant supplemented the Canadians' salary with an "add-on," so that the Canadian resident's salary would actually be $X Canadian + [add-on]. In 1993, Defendant changed its Canadian compensation policy once again, shifting half of the add-on amount into the Canadian employees' base salary and eliminating the rest of the erstwhile add-on entirely. In this way, the 1993 policy change effectively diminished the Canadian commuters' wages by one-half the add-on amount from the pre-1993 amount.

For several years, Plaintiffs complained of the wage shortfall they suffered as a result of the 1986 and 1993 policies, but Plaintiffs did not sue Defendant over the policies until May 31, 2001. In that 2001 complaint, pleading violations of ELCRA and § 1981, Plaintiffs alleged that the 1986 policy resulted in lower pay for workers of Canadian national origin, even with the add-on, and that the 1993 policy exacerbated the wage discrimination by further decreasing the Canadian residents' wages. In a January 2002 opinion, this Court dismissed the § 1981 claim and the intentional discrimination claim under ELCRA[1], leaving only Plaintiffs' disparate impact claim under ELCRA. Therefore, Plaintiffs' only remaining claim is that the 1986 and 1993 policies (hereinafter collectively referred to as "the salary policy") had a disparate impact on persons of Canadian national

---

[1] The Court ruled that the salary policies were not facially discriminatory on the basis of national origin because its wage discrepancies were actually based on residency.

3

origin by paying lower wages to Canadian residents.

During an April 29, 2003 hearing on Plaintiffs' Motion for Class Certification, Defendant argued for the first time that Plaintiffs did not have a cognizable disparate impact claim because 1) the salary policy is not facially neutral, and 2) Plaintiffs did not have an appropriate comparison group to reveal the disparate impact. At that hearing, the Court indicated that Plaintiffs' putative class satisfied the requirements of Rule 23, and so it would certify the class if Plaintiffs could survive Defendant's new argument against their disparate impact model. Accordingly, the Court invited supplemental briefing on the issue of Defendant's disparate impact argument, on the understanding that if Defendant's motion is denied, then Plaintiffs' class will be certified.

IV. DISCUSSION

A. Defendant's Salary Policy is Facially Neutral

Defendant argues that Plaintiff cannot present a disparate impact claim because the allegedly discriminatory policy is not facially neutral. Defendant correctly observes that a disparate impact claim requires a facially neutral policy. E.g., Equal Employment Opportunity Comm'n v. Joe's Stone Crab, 220 F.3d 1263, 1278 (11th Cir. 2000). Defendant argues that its salary policy is not facially neutral because the group that gets paid less is homogenous: that is, the aggrieved group consists entirely of Canadians. Defendant's argument fails, however, because although the aggrieved group consists entirely of Canadian residents, it does not consist entirely of people of Canadian national origin. Therefore, the policy is facially neutral across the protected classification, which is national origin. Defendant cites a long string of cases, but these cases stand merely for the truism that a disparate impact claim requires facial neutrality of the attacked policy. E.g., id.; Cruz

4

v. Coach Stores, Inc., 202 F.3d 560, 572 (2nd Cir. 2000); Senner v. Northcentral Technical Coll., 113 F.3d 750, 757 (7th Cir. 1997); Grant v. General Motors Corp., 908 F.2d 1303, 1308-10 (6th Cir. 1990).

Furthermore, in every one of these cases, the court ruled that instead of a disparate impact case, the Plaintiff was really pleading a disparate treatment claim. This is an inescapably logical conclusion: if a policy discriminates against a protected class, it either does so intentionally on the basis of that classification (disparate treatment), or it does not (disparate impact). Defendants argue that a policy that distinguishes on a non-protected characteristic can be per se unfit to serve as the basis of a disparate impact claim, but none of the cases it cites for that proposition are apposite. For example, the court in Espinoza v. Farah Mfg. Co., Inc., 414 U.S. 86, 92-93 (1973), held that a disparate impact claim could not be based on a policy distinguishing on the basis of citizenship because there was no evidence that the policy had a disparate impact on people of non-American national origin. The Espinoza court did *not* rule, contrary to Defendant's implication, that a disparate impact claim was not cognizable under such a policy. See also Barnett v. Technology Int'l, Inc., 1 F.Supp.2d 572, 579-80 (E.D. Va. 1998) (no disparate impact claim because there was no evidence of any discriminatory effect). Similarly, in Muzquiz v. W.A. Foote Memorial Hosp., Inc., 70 F.3d 422, 429 (6th Cir. 1995), the Sixth Circuit rejected a disparate impact claim because there was no link established as a matter of fact between the policy in question and being of any national origin. In conclusion, the salary policy intentionally distinguishes on the basis of residency, but this does not alter its facial neutrality with respect to the protected classification of national origin.

B.   Employees of American National Origin compose an Appropriate Comparison Group

In order to present a cognizable disparate impact claim, Plaintiffs must show that they have

5

been disparately impacted by the salary policy relative to a favored group under the policy. In this case, Plaintiffs contend that the distinction between Canadian and American *residents* results in a disparate impact on employees of Canadian national origin relative to employees of American national origin. Defendant's argument to the contrary is that Plaintiffs' cannot provide a suitable comparison group because the salary policy only affects Canadian residents, and does not affect Americans. The Court disagrees with Defendant's way of framing the issue, however. The more appropriate way to view Defendant's policy is to view it as a holistic wage policy that pays Canadian residents in Canadian dollars and American residents (including many employees of American national origin) in American dollars. Defendant's manner of narrowing the policy so that its effect on Canadian residents is isolated from any comparison would give employers an easy way to formalistically avoid disparate impact claims. Namely, the employer could simply recast a discriminatory policy disparately treating employee subsets X and Y into two separate policies, one of which applies to X and the other of which applies to Y.

Defendant cites Gerdom v. Continental Airlines, Inc., 692 F.2d 602, 612 (9th Cir. 1982), in support of its conception of the issue, but Defendant fails to note that it cites the dissent; the majority did not reach the issue of disparate impact at all. Furthermore, the dissent's argument in Gerdom does not apply here: Gerdom dealt with a weight policy for airline flight attendants, and the dissent rejected a disparate impact theory of discrimination against women because there were simply no similarly situated men working for Continental, as there were no male flight attendants and no other position had a comparable job description. Id. Here, in contrast, Plaintiffs allege that they have the exact same kinds of jobs, with the same duties and job descriptions, as their American counterparts. The Gerdom dissent did not make a blanket ruling that a policy that nominally applies

6

to a group consisting solely of protected class members (and does not apply to a different group including favored class members) can never be the basis for a disparate impact claim.

Kim v. Commandant, Def. Language Inst., Foreign Language Ctr., 772 F.2d 521, 523 (9th Cir. 1985), is similarly unavailing because the plaintiff in that case also had no similarly situated individuals with whom to compare himself. The same is true of Wards Cove Packing Co., Inc. v. Atonio, 490 U.S. 642, 650-51 (1989); Donnelly v. Rhode Island Bd. of Governors for Higher Educ., 110 F.3d 2, 6 (1st Cir. 1997); and Duranceau v. Alpena Power Co., 250 Mich. App. 179, 183-84 (2002). In Wards Cove, the plaintiffs did not compare themselves to similarly qualified employees. The Donnelly and Duranceau plaintiffs could provide similarly situated employees outside their protected group, but those employees were treated the same as the plaintiffs and therefore there was no disparate impact. None of those three cases advanced Defendant's form-based argument that a policy can escape disparate impact analysis because it does not nominally apply to anyone outside the protected class. Here, Plaintiffs allege that Defendant's overall wage policy, which pays Canadian residents differently than American residents, results in a disparate pay system that impacts those of Canadian national origin worse than their similarly situated counterparts of American national origin. This is a cognizable disparate impact claim.[2]

C. Defendant's Espinoza Argument is Unpersuasive

Defendant finally reiterates its argument that "Espinoza teaches that adverse impact/statistical analysis is not applicable where there is a substantial correlation between the number of people

---

[2] Defendant also asserts, in passing, that American residents are not similarly situated to Plaintiffs because they were "actually hired by... different companies and reside in... different countries, where they are subject to different tax, pension and benefit laws and regulations." This assertion, however, speaks more to the question of whether Plaintiffs are actually discriminated against relative to American residents, not whether they are similarly situated. Furthermore, the question of whether Plaintiffs actually suffer a disparate impact is one that will require evidentiary argument, and such argument is not the focus of this supplemental briefing.

7

having a protected characteristic (national origin) and the number of people having a characteristic that is a permissible basis for an employment-related decision." Def. Br. at 13. As already pointed out above, however, Espinoza taught no such thing; rather, Espinoza dictated that disparate impact could not simply be *assumed* in such a situation, but needed to be shown by the evidence. Espinoza, 414 U.S. at 92-93; Barnett, 1 F.Supp.2d at 579-80 (no disparate impact claim because there was no evidence of any discriminatory effect). Defendant's other cases, similarly, do not foreclose the use of disparate impact theories in situations with classifications closely correlated with national origin; they merely counsel that in such cases, raw statistical comparisons may be misleading and therefore cannot provide the sole evidentiary basis for a showing of disparate impact. MacNamara v. Korean Air Lines, 863 F.2d 1135, 1148 (3rd Cir. 1988) (cited in Goyette v. DCA Adver. Inc., 828 F.Supp. 227, 236 (S.D.N.Y. 1993)). To the extent that Goyette flatly bars any statistical analysis of how residency discrimination results in national origin discrimination, this Court respectfully declines to follow that District Court's decision. In short, Espinoza and its progeny do not foreclose Plaintiffs' disparate impact claim.

## V. CONCLUSION

For the reasons set forth above, the Court DENIES Defendant's Renewed Motion to Dismiss and GRANTS Plaintiffs' Motion for Class Certification.

IT IS SO ORDERED.

DATE: 3 1 JUL 2003

_____
Hon. Marianne O. Battani